RACHEL ELELETH,                    )
                                   )
        Plaintiff,                 )
                                   )
        vs.                        )    Civil Action No. 07-1479
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
        Defendant.                 )

## MEMORANDUM OPINION

### I.  INTRODUCTION

Pending before the Court are cross-motions for summary judgment filed by Plaintiff Rachel Eleleth and Defendant Michael J. Astrue, Commissioner of Social Security. Plaintiff seeks review of final decisions by the Commissioner denying her claims for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and supplemental security income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* For the reasons discussed below, Defendant's motion is denied and Plaintiff's motion is granted insofar as she seeks remand for further consideration by the Commissioner.

### II.  BACKGROUND

#### A.  Factual Background

Rachel Eleleth was born in 1964 and completed one year

1

of college in 1984. (Certified Copy of Transcript of Proceedings before the Social Security Administration, Docket No. 6, "Tr.," at 144.) In 1991, shortly after the birth of her first child, she was diagnosed with systemic lupus erythematosus ("lupus" or "SLE"), a chronic inflammatory autoimmune disorder.[1] (Tr. 243.) According to her medical history, in 1992, she caught a severe case of poison ivy which required steroid shots. The same year, she developed severe swelling and an itchy red rash while driving in a convertible, the first of such episodes which steadily intensified any time she was exposed to direct sunlight. (Tr. 556.)

Although Ms. Eleleth had started her own landscaping company in November 1986, Plaintiff closed this business in December 1992 due to increased sensitivity to natural light, and opened her own

_____

[1] Lupus may affect the skin, joints, kidneys, and other organs. Its underlying cause, like those of other autoimmune diseases, is not fully known. SLE affects nine times as many women as men; it may occur at any age, but appears most often in people between the ages of 10 and 50 years. SLE may be mild or severe enough to cause death. Symptoms vary from person to person, and may come and go; they include fever, fatigue, malaise, joint pain and swelling (most often in the fingers, hands, wrists and knees), swollen glands, muscle aches, nausea and vomiting, pleurisy and pleural effusions, seizures and psychosis. Skin rashes (a "butterfly" rash over the cheeks and bridge of the nose affects about half of those with SLE) may be widespread and may get worse in sunlight. Almost all people with SLE have joint pain and most develop arthritis. Inflammation of various parts of the heart may occur as pericarditis, endocarditis, or myocarditis. Chest pain and arrhythmias may result from these conditions. There is no cure for SLE. Treatment is aimed at controlling symptoms, e.g., nonsteroidal anti-inflammatory medications are used to treat arthritis and pleurisy; corticosteroid creams are used to treat skin rashes; an anti-malaria drug called hydroxychloroquine and low dose corticosteroids are sometimes used for skin and arthritis symptoms. See the on-line medical encyclopedia maintained by the National Institute of Medicine at www.nlm.nih.gov/medlineplus (last visited August 11, 2008), "Medline Plus."

2

bookstore in September 1993. She continued to work at this occupation through October 1999. (Tr. 104, 119.)

In July 1993, Plaintiff began treating at the Rheumatology Clinic at the University of Pittsburgh Medical Center ("UPMC.") At the time, she reported that upon any sun exposure, she developed a severe rash which could last up to 24 hours. (Tr. 268.) In 2000, Ms. Eleleth became pregnant with her second child. As a result of her advanced maternal age and her SLE condition, she was carefully monitored at Magee Hospital in Pittsburgh, Pennsylvania, and then at University Hospital in Portland, Oregon, where she and her husband moved in late 2000. In anticipation of her planned pregnancy, Ms. Eleleth had stopped taking the medications prescribed for lupus, i.e., prednisone and Plaquenile,[2] in mid-2000. However, she reported strong phototoxicity to her obstetrician and stated that because she developed a rash after approximately 30 to 40 minutes in direct light, she was concerned about the lights being dimmed during her labor and delivery. (Tr. 235.) As late as April 2001, despite the lack of medication, her lupus was described as "relatively benign, with the primary symptoms of rash, itching and muscle aches." (Tr. 225.)

---

[2] Among numerous other applications, prednisone is used to treat certain types of arthritis, severe allergic reactions, multiple sclerosis, and lupus. It is in a class of medications called corticosteroids; it reduces swelling and redness and changes the way the immune system works. Plaquenile (hydroxychloroquine) is an antimalarial drug, also used to treat SLE and rheumatoid arthritis in patients whose symptoms have not improved with other treatments. *See* drugs and supplements information at Medline Plus.

3

Following the birth of her second child, Ms. Eleleth worked part-time from her home, buying items at local thrift shops and selling them on the internet. She and her family returned to Pittsburgh sometime in 2001. By that time, Plaintiff's sensitivity to light had increased to the point that she would become acutely red and swollen within 10 minutes of going out under the sun or being exposed to day light through windows; she would then develop an itchy rash on the exposed skin. (Tr. 249.) Plaintiff claimed that she experienced the same effects – albeit to a lesser degree – when exposed to fluorescent or incandescent light or the light emitted from a television or computer screen. (Tr. 600-601.) In 2006, dermatologists at UPMC diagnosed Plaintiff with solar urticaria.[3]

B. Procedural Background

On July 18, 2005, Ms. Eleleth applied for disability and supplemental security income benefits, claiming that she was

---

[3] Solar urticaria is a recognized form of photosensitivity, an allergy triggered by sunlight. It is generally characterized by an itchy eruption of patches that develop after only a few minutes of exposure to sun light. The hives may be accompanied by headaches, dizziness, weakness or nausea. While the condition may be congenital, it may also develop as a result of certain drugs and is often a symptom of lupus. There are no specific tests for photosensitivity reactions and treatment consists largely of protective clothes, avoidance of sunlight as much as possible, and use of topical sun screens. Solar urticaria associated with lupus may be treated with topical corticosteroids or hydroxychloroquine or corticosteroids taken by mouth. Occasionally, people can be desensitized to the effects of sunlight by gradually increasing their exposure to UV light, a process known as UV hardening. *See* the Merck Manual of Medical Information, Second Edition, at www.merck.com/mmhe/print/sec18/ch214/ch214c.html (last visited August 17, 2008.)

4

disabled as of July 31, 2000, as a result of SLE, photosensitivity, degenerative disk disease, and hypothyroidism.[4]  (Tr. 129, 138.) Both applications were initially denied on October 26, 2005 (Tr. 52-56; 582-586), after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ.")  (Tr. 57.)

On February 7, 2007, a hearing was held before the Honorable Kenneth Andrews at which Plaintiff was represented by counsel. Judge Andrews issued his decision on April 25, 2007, again denying DIB and SSI benefits.  (Tr. 17-26.)  The Social Security Appeals Council declined to review the ALJ's decision on September 14, 2007, finding no reason pursuant to its rules to do so.  (Tr. 6-8.) Therefore, the April 25, 2007 opinion became the final decision of the Commissioner for purposes of review.  42 U.S.C. § 405(h); Rutherford v. Barnhart, 399 F.3d 546, 549-550 (3d Cir. 2005), *citing* Sims v. Apfel, 530 U.S. 103, 107 (2000).  Plaintiff filed suit in this Court on October 31, 2007, seeking judicial review of the ALJ's decision.

---

[4]  Previous applications for SSI and DIB were denied in October 2002 and June 2004.  (*See* Tr. 42-46; 47-51; 570-574.)  Plaintiff apparently did not appeal those denials.  The ALJ stated that he found no basis for re-opening or revising those determinations (Tr. 17) and Plaintiff does not object to that decision in the brief in support of her motion for summary judgment nor argue that the ALJ constructively re-opened the prior claims.  Consequently, Plaintiff's claim for benefits before June 22, 2004, is barred by res judicata.  *See* 20 C.F.R. § 404.957(c)(1); Tobak v. Apfel, 195 F.3d 183, 186 (3d Cir. 1999) (res judicata precludes a subsequent claim for disability benefits where the same claimant filed a previous application based on the same allegations and where such prior determination has become final through administrative or judicial action.)

5

## C. Jurisdiction

This Court has jurisdiction by virtue of 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g)) which provides that an individual may obtain judicial review of any final decision of the Commissioner by bringing a civil action in the district court of the United States for the judicial district in which the plaintiff resides.

## III. STANDARD OF REVIEW

The scope of review by this Court is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389 (1971); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). Findings of fact by the Commissioner are considered conclusive if they are supported by "substantial evidence," a standard which has been described as requiring more than a "mere scintilla" of evidence, that is, equivalent to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, id. at 401. "A single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve a conflict, created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

This Court does not undertake *de novo* review of the decision

6

and does not re-weigh the evidence presented to the Commissioner. Schoengarth v. Barnhart, 416 F. Supp.2d 260, 265 (D. Del. 2006), *citing* Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986) (the substantial evidence standard is deferential, including deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence.) If the decision is supported by substantial evidence, the Court must affirm the decision, even if the record contains evidence which would support a contrary conclusion. Panetis v. Barnhart, CA No. 03-3416, 2004 U.S. App. LEXIS 8159, *3 (3d Cir. Apr. 26, 2004), *citing* Simmonds v. Heckler, 807 F.2d 54, 58 (3rd Cir. 1986), and Sykes v. Apfel, 228 F.3d 259, 262 (3rd Cir. 2000).

## IV.  **LEGAL ANALYSIS**

### A.  The ALJ's Determination

In determining whether a claimant is eligible for supplemental security income, the burden is on the claimant to show that she has a medically determinable physical or mental impairment (or combination of such impairments) which is so severe she is unable to pursue substantial gainful employment[5] currently existing in the national economy.[6]  The impairment must be one which is

---

[5]  According to 20 C.F.R. § 416.972, substantial employment is defined as "work activity that involves doing significant physical or mental activities." "Gainful work activity" is the kind of work activity usually done for pay or profit.

[6]  The claimant seeking supplemental security income benefits must also show that her income and financial resources are below a certain

expected to result in death or to have lasted or be expected to last not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i); Morales v. Apfel, 225 F.3d 310, 315-316 (3d Cir. 2000). To be granted a period of disability and receive disability insurance benefits, a claimant must also show that she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a). The Commissioner does not dispute that Ms. Eleleth satisfied the first two non-medical requirements, and the record shows that Plaintiff's date last insured was December 31, 2007. (Tr. 97.)

To determine a claimant's rights to either SSI or DIB,[7] the ALJ conducts a formal five-step evaluation:

(1) if the claimant is working or doing substantial gainful activity, she cannot be considered disabled;

(2) if the claimant does not suffer from a severe impairment or combination of impairments that significantly limits her ability to do basic work activity, she is not disabled;

(3) if the claimant does suffer from a severe impairment which meets or equals criteria for an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") and the condition has lasted or is expected to last continually for at least twelve months, the claimant is considered disabled;

level. 42 U.S.C. § 1382(a).

[7] The same test is used to determine disability for purposes of receiving either type of Social Security benefits. Burns v. Barnhart, 312 F.3d 113, 119, n.1 (3d Cir. 2002). Therefore, courts routinely consider case law developed under both programs.

8

(4) if the claimant retains sufficient residual functional capacity ("RFC") to perform her past relevant work, she is not disabled; and

(5) if, taking into account her RFC, age, education, and past work experience, the claimant can perform other work that exists in the local, regional or national economy, she is not disabled.

20 C.F.R. § 416.920(a)(4); *see also* Morales, 225 F.3d at 316.

In steps one, two, and four, the burden is on the claimant to present evidence to support her position that she is entitled to Social Security benefits, while in the fifth step the burden shifts to the Commissioner to show that the claimant is capable of performing work which is available in the national economy.[8] Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).

Following the prescribed analysis, Judge Andrews first concluded that Ms. Eleleth had engaged in work activity since July 31, 2000, the alleged onset date, based on earnings reports which showed income in 2003 through 2005.[9] (Tr. 19, *see also* Tr. 98.)

---

[8] Step three involves a conclusive presumption based on the listings, therefore, neither party bears the burden of proof at that stage. Sykes, 228 F.3d at 263, n2, *citing* Bowen v. Yuckert, 482 U.S. 137, 146-147 n5 (1987).

[9] Ms. Eleleth testified that her income in 2004 ($18,179) was the result of selling her personal library collection "in order to survive." (Tr. 596.) She also testified that she was currently working part-time from her home, earning between $400 and $500 a month. (Tr. 595.) Although part-time work can constitute substantial gainful employment ("SGA"), the Social Security Administration has established an upper limit for income a claimant may receive without those earnings giving rise to the conclusion that he has performed SGA. Before June 1999, this amount was $500 per month; it was increased to $700 per month as of July 1999 and has been calculated by formula since that time. See 20 C.F.R. § 416.974 and SGA calculator at www.ssa.gov/OACT/COLA/SGA.html (last visited August 17, 2008.)

However, in light of his ultimate decision that Plaintiff was not disabled at any time under consideration, he concluded this issue did not need to be pursued further. (Tr. 19.)

Resolving step two in Plaintiff's favor, the ALJ found her severe impairments included SLE with photosensitivity and degenerative disk disease. Although medical evidence also included references to Raynaud's syndrome,[10] migraine headaches, and hypothyroidism,[11] the ALJ concluded these conditions were manageable with medication and there was no evidence that they caused any vocational limitations. Consequently, Judge Andrews concluded these impairments were not severe because they had no more than a minimal effect on Plaintiff's ability to perform work-related

---

[10] Raynaud's phenomenon (or syndrome) is a condition in which cold temperatures or strong emotions cause blood vessel spasms that block blood flow to the fingers, toes, ears, and nose. These parts of the body become white, then turn blue; when blood flow returns, the area becomes red, then later returns to normal color. The attacks may last from minutes to hours. Raynaud's phenomenon may be associated with SLE as well as with other arterial diseases. *See* medical encyclopedia at Medline Plus.

[11] Ms. Eleleth had been tentatively diagnosed in January 2004 with Hashimoto's disease, or chronic thyroiditis (*see*, e.g., Tr. 396; 554), an inflammation of the thyroid gland that frequently results in hypothyroidism (lowered thyroid function), a condition which may be associated with other autoimmune disorders. Symptoms include (among others) intolerance to cold, mild weight gain, fatigue, constipation, dry skin, hair loss and heavy and irregular menses. *See* medical encyclopedia at Medline Plus. All the above symptoms had been reported by Plaintiff to various physicians during the period covered by her medical records. Plaintiff testified, as the ALJ pointed out, that synthyroid, the drug prescribed as thyroid replacement therapy, had improved this condition. (*See* Tr. 601.)

activities.[12]    (Tr. 20.)    At step three, the ALJ concluded

Plaintiff's degenerative disk disease did not meet the requirements

of Listing 1.00, pertaining to the musculoskeletal system, and

although she experienced photosensitivity, her SLE did not rise to

"listing level severity when evaluated under listing 5.00 [sic]."

(Tr. 20.)

At step four, the ALJ concluded that Ms. Eleleth had

the residual functional capacity to perform light work
that does not involve more than occasional bending,
stooping, crawling, crouching, balancing or climbing.
Further, [she] should avoid exposure to heat, cold,
wetness, heights, dust, fumes, odors and gases, and must
avoid sunlight, windows, and bright artificial light.

(Tr. 20.)

The ALJ further concluded that due to her non-exertional

limitations, Plaintiff could not perform her previous work as a

bookstore owner and her self-employment in the clothing re-sale

business, which the vocational expert ("VE") at the hearing,

Frances N. Kinley, had described as semi-skilled light work. (Tr.

24; see also Tr. 602-604.)

In response to the ALJ's hypothetical questions at the

hearing, Ms. Kinley had testified there were unskilled light-level

jobs such as cleaner, stock clerk, general office clerk, and mail

clerk which could be performed at night or under low-light

---

[12]   In her brief in support of the motion for summary judgment,
Plaintiff does not contend that the ALJ erred in this finding and,
consequently, the Court will not address these conditions in detail.

conditions. She further testified that an individual of Ms. Eleleth's age, education, and other non-exertional limitations could perform such jobs which were generally available in the national economy. (Tr. 25; *see also* Tr. 604-605.) Based on Plaintiff's status as a younger individual[13] with at least a high school education, a history of work which did not provide transferrable skills, the medical evidence of record, and the testimony of the VE, the ALJ determined at step five that Ms. Eleleth was not disabled at any time from July 31, 2000, through the date of the ALJ's decision, and, consequently, not entitled to benefits. (Tr. 25.)

## B. Plaintiff's Arguments

Plaintiff argues that the ALJ committed multiple errors of law in evaluating the evidence of record. First, the ALJ erred in discounting entirely Dr. Holly Mason's opinion of Ms. Eleleth's disability, particularly her description of Plaintiff's solar urticaria as "a disabling condition which has severely impacted [Plaintiff's] daily activities for 14 years." (Brief in Support of Motion for Summary Judgment, Docket No. 9, "Plf.'s Brief," at 7, quoting Tr. 552.)[14] The ALJ further erred by making speculative

[13] Plaintiff was 36 years old on the alleged disability onset date and 43 at the time of the hearing, making her a "younger" person according to Social Security regulations. 20 C.F.R. §§ 404.1563(c) and 416.963(c).

[14] The heading for this portion of Plaintiff's argument also refers to the ALJ's rejection of her RFC concerning "persistence, pace and concentration." (Plf.'s Brief at 7.) Plaintiff has never alleged

12

inferences from an RFC analysis by a non-examining state agency physician, which in turn had purportedly relied on the opinion of a one-time consultative examiner, Dr. Richard Rydze, but failed to incorporate Dr. Rydze's findings with regard to Plaintiff's photosensitivity. (Plf.'s Brief at 7-9.) Third, the ALJ erred by finding Plaintiff's testimony concerning the intensity, persistence and limiting effects of her impairment-related symptoms was not entirely credible, even though the testimony was consistent with Dr. Mason's report and no other medical evidence contradicted her statements. (Id. at 9-10.) Fourth, the ALJ erred by disregarding the VE's response to the final hypothetical posed to her regarding Plaintiff's ability to perform jobs that exist in significant numbers in the national economy. That is, when the question limited a hypothetical claimant to positions which would require no more than 10 to 15 minutes of exposure to sunlight, light coming through windows, or bright artificial light, Ms. Kinley testified that such a restriction would eliminate all the jobs she had previously identified, yet the ALJ rejected the VE's testimony without explanation. (Id. at 10-11.)

As an alternative to the direct award of benefits, Plaintiff argues that the matter should be remanded to the ALJ for full analysis under the correct Listing(s). The ALJ stated that he had

mental impairments such as depression in which persistence, pace and concentration are taken into consideration. The Court therefore will disregard this reference.

13

considered Ms. Eleleth's SLE, particularly the photosensitivity, under Listing 5.00 and determined that her condition did not rise to listing level severity. However, Listing 5.00 refers to digestive system impairments rather than skin conditions which are discussed in Listing 8.00. According to Plaintiff, until the ALJ "has clearly established" that he reviewed her conditions under the correct Listing, the analysis is "fatally flawed" at step three. (Plf.'s Brief at 11-12.)

Rather than addressing these arguments sequentially, we summarize the ALJ's review of the medical evidence, raising several questions which we conclude require reconsideration and further explanation on remand. Inasmuch as Plaintiff's arguments concern only the ALJ's treatment of the medical evidence, her own testimony and that of the VE regarding Ms. Eleleth's photosensitivity and its impact on her RFC, we omit most of the medical evidence concerning Plaintiff's degenerative disk disease and other impairments.

1. *The ALJ's consideration of the Listings:* As noted above, the ALJ compared Plaintiff's degenerative disk disease to Listing 1.00, the musculoskeletal system and her lupus to Listing 5.00. (Tr. 20.) Plaintiff correctly points out that Listing 5.00 pertains to disorders of the digestive system, not the skin. We do not agree with Plaintiff's argument, however, that SLE should have been evaluated under Listing 8.00; rather, the ALJ should have begun with Listing 14.00, impairments of the immune system,

14

specifically, Listing 14.02.[15] Defendant correctly notes this error
in his brief, however, then goes on to argue that the ALJ's
reference to the wrong Listing does not require remand because
Plaintiff does not satisfy the criteria of Listing 14.02.
(Defendant's Brief in Support of His Motion for Summary Judgment,
Docket No. 11, "Def.'s Brief," at 11-12.)   The determination of
whether a claimant's impairments satisfies a listing is the ALJ's
responsibility, not that of Defendant after the fact nor of this
Court.   *See* Edwards v. Astrue, 525 F. Supp.2d 710, 716 (E.D. Pa.
2007), *citing* 20 C.F.R. § 416.927(e) ("the determination of whether
or not a claimant meets a listing is reserved for the ALJ.")

We find that the ALJ's conclusion at step three is too

---

[15]   Listing 14.02, pertaining to SLE, is satisfied when the
claimant shows classical symptoms of the disorder (*see* Listing 14.00B1
at note 16, below) and

A.   One or more of the following:
    1. Joint involvement, as described under the criteria in 1.00; or
    2. Muscle involvement, as described . . . in 14.05; or
    3. Ocular involvement, as described . . . in 2.00ff; or
    4. Respiratory involvement, as described . . . in 3.00ff; or
    5. Cardiovascular involvement, as described . . . in 4.00ff or
14.04D; or
    6. Digestive involvement, as described . . . in 5.00ff; or
    7. Renal involvement, as described . . . in 6.00ff; or
    8. Hematologic involvement, as described . . . in 7.00ff; or
    9. Skin involvement, as described . . . in 8.00ff; or
    10. Neurological involvement, as described . . . in 11.00ff; or
    11. Mental involvement, as described . . . in 12.00ff.
or
B. Lesser involvement of two or more organs/body systems listed in
paragraph A, with significant, documented, constitutional symptoms and
signs of severe fatigue, fever, malaise, and weight loss. At least one
of the organs/body systems must be involved to at least a moderate
level of severity.
20 C.F.R. pt. 404, subpt. P, App. 1, § 14.02.

ambiguous to allow meaningful review. Assuming the ALJ's reference to Listing 5.00 is not simply a typographical error - that is, if he actually considered the medical evidence regarding Plaintiff's SLE against the listing for digestive disorders -- he clearly committed an error of law requiring remand. If he considered Plaintiff's lupus -- as compared to the photosensitivity which is an established symptom of the disease - against Listing 8.00 (that is, the reference to Listing 5.00 *is* a typographical error), that is also erroneous because such an analysis would omit consideration of Plaintiff's other symptoms possibly related to SLE.

On the other hand, if the ALJ actually began with Listing 14.02, then went to Listing 8.00, his conclusory statement that Plaintiff's lupus (or her photosensitivity) did not rise to listing severity is inadequate. It is well-established in this Circuit that while the ALJ must set forth the reasons for his decision at step three, is no requirement that he "use particular language or adhere to a particular format in conducting his analysis;" however, the decision "read as a whole" must be capable of providing meaningful judicial review. <u>Jones v. Barnhart</u>, 364 F.3d 501, 505 (3d Cir. 2004), *citing* <u>Burnett v. Comm'r of SSA</u>, 220 F.3d 112, 118-119 (3d Cir. 2000). That is, although the ALJ may fail to explicitly identify the correct (or indeed any) listing, when his analysis elsewhere refers to specific criteria of the appropriate listing and compares the medical evidence to those criteria,

reviewing courts are able to follow the reasoning for the ALJ's conclusion at step three that the claimant's impairments do not meet or equal a particular listing. *See* Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 93 (3d Cir. 2007), pointing out that meaningful review at step three is informed by the extent of the ALJ's review of the objective medical evidence. Conversely, where the ALJ fails to identify the evidence he relied upon at step three, fails to identify the specific listing(s) to which he compared the claimant's impairments, does not discuss medical equivalence or identify the elements missing from the criteria of the listing, the court is unable to discern the basis for his findings. *Compare*, e.g., Smith v. Barnhart, No. 02-1675, 2002 U.S. App. LEXIS 25441, *8-*9 (3d Cir. Dec. 9, 2002), remanding so that the ALJ could adequately identify and discuss the evidence he relied upon in determining that the plaintiff's impairment did not meet or equal a listed impairment, *with* Cosby v. Comm'r of Soc. Sec., No. 06-3157, 2007 U.S. App. LEXIS 10267, *19 (3d Cir. May 1, 2007), declining to remand where the ALJ's methodical analysis of (1) the claimant's limitations vis-a-vis the relevant criteria, (2) the medical and non-medical evidence, and (3) the claimant's testimony, taken as a whole, allowed meaningful review of his conclusion at step three, even in the absence of reference to a specific listing.

Finally, if the ALJ only took into consideration Plaintiff's photosensitivity, he may not have reviewed the alternative prong of

Listing 14.02. Contrary to Defendant's argument that Plaintiff's lupus was consistently described only as "mild" or "moderate," the Listing does not require that the symptoms of lupus, *per se*, be severe.[16] As we read Listing 14.02, a claimant's impairments satisfy that Listing when she shows the "classical signs" of lupus and the effect of the disease on one or more body systems (e.g., joints, renal, skin, mental) rises to the relevant related listing level. (*See* Listing 14.02A, set out in the margin above at note 15.) Defendant may be correct in his assertion that the medical evidence does not show that any one of Plaintiff's impairments satisfies a related Listing. However, he fails to acknowledge that there is an alternative way to satisfy Listing 14.02, i.e., "lesser involvement" of two or more body systems identified in the first part of the Listing, one of which involves "at least a moderate

---

[16] *See* Listing 14.00B1, referring to the symptoms set out in the 1982 Revised Criteria for the Classification of Systematic Lupus Erythematosus of the American College of Rheumatology (Tan, E.M., et al., Arthritis Rheum. 25:11271-1277, 1982.) These criteria include: malar rash (fixed abnormal redness, flat or raised, over the cheekbones); discoid rash (red circular raised patches with adherent scaling and follicular plugging); photosensitivity (exposure to ultraviolet light resulting in rash); oral and/or nasopharyngeal ulcers; non-erosive arthritis of two or more peripheral joints with tenderness, swelling, or effusion; serositis (pleuritis or pericarditis); renal disorder; neurologic disorder (seizures or psychosis without other causes); hematologic disorder (e.g., hemolytic anemia, leukopenia, lymphopenia, or thrombocytopenia in the absence of offending drugs); immunologic disorder; anti-double-stranded DNA, anti-Sm, and/or anti-phospholipid; and anti-nuclear antibodies. Any combination of 4 or more of 11 criteria, well-documented at any time during a patient's history, makes it likely that the patient has SLE. *See* www.medicalcriteria.com/ [–] criteria/sle.htm (last visited August 17, 2008.) Ms. Eleleth's diagnosis was based on photosensitivity, fatigue, arthralgias and positive anti-cardiolipin antibody. (Tr. 317.)

18

level of severity," together with other constitutional symptoms and signs. *See* Listing 14.02B. The medical evidence shows that Plaintiff has both degenerative disk disease (i.e., joint) and skin involvement which the ALJ found were severe impairments, and she has intermittently complained of fatigue and malaise over the relevant period. The ALJ's failure to refer to Listing 14.02B or to discuss the criteria thereof casts further doubt on whether he actually considered the appropriate Listing and takes his analysis outside the scope of meaningful review.

We conclude that this matter must be remanded for further consideration and clarification at step three of the analysis.

2. *The ALJ's analysis of the medical evidence:* Again, focusing only on the medical evidence pertaining to Plaintiff's photosensitivity, we note the following from the ALJ's opinion.

Judge Andrews's ultimate conclusion was that Plaintiff could perform a range of light work with numerous postural and environmental restrictions, including limited exposure to "sunlight, windows, and bright artificial light." (Tr. 20.) The medical evidence cited by the ALJ included the report of a consultative examiner, Dr. Marc D. Laufe, who evaluated Ms. Eleleth in June 2004 concerning her SLE. His conclusions were that although Plaintiff suffered from mild SLE and had no physical restrictions, she "should not be exposed to light because of her photosensitivity." (Tr. 22; *see also* Tr. 272-279.)

The ALJ also noted that in September 2005, Plaintiff underwent a second consultative examination by Dr. Richard Rydze. The ALJ cited Dr. Rydze's impressions of SLE with photosensitivity, hypothyroidism, and discogenic back disease. Unlike Dr. Laufe who indicated that Ms. Eleleth had no physical, postural or environmental limitations except exposure to light, Dr. Rydze noted that Plaintiff would be limited to occasionally lifting and carrying 25 pounds; could stand and walk for 4 hours and sit for 6 hours during an 8-hour work day; could only occasionally bend, kneel, stoop, crouch, balance or climb; "and should not be exposed to heights, temperature extremes, chemical [sic], humidity, fumes, odors or gases." (Tr. 23; *see also* Tr. 417-424.) Dr. Rydze further noted Plaintiff's photosensitivity as an environmental restriction, but cautioned this conclusion was based only on Plaintiff's own reports. (Tr. 422, 419.)

The ALJ noted the physical residual functional capacity assessment dated October 24, 2005, based on a medical file review by a state agency physician[17] who concluded Plaintiff "could perform work at the light exertional level," an opinion with which the ALJ agreed "because it is consistent with the medical evidence of record." (Tr. 23; *see also* Tr. 425-434.)

---

[17] "State agency physicians and psychologists are considered to be 'highly qualified physicians and psychologists who are also experts in Social Security disability evaluation,' and the ALJ must consider their findings as opinion evidence." Poulos, 474 F.3d at 93, n.2, quoting 20 C.F.R. §§ 404.1527(f) and 416.927(f).

Judge Andrews further summarized Plaintiff's medical treatment at UPMC for her lupus symptoms and other conditions between March 2003 and November 2006. In particular, he compared the medical records compiled during that period with a letter written by Holly Mason, M.D., Ph.D., and Professor Joseph English, both from the University of Pittsburgh School of Medicine Department of Dermatology. Although the ALJ explicitly noted the statement by Drs. Mason and English that Plaintiff's "solar urticaria is a disabling condition that has severely impacted claimant's daily activities for 14 years," he concluded that the records did not "require a conclusion that the claimant [has been] disabled for any period of 12 consecutive months." In particular, he noted that the records "have shown improvement in claimant's skin condition" and that the Mason/English report did not rule out work within the scope of the RFC he had adopted. (Tr. 22; *see also* Tr. 287-308, 435-439, 550-558.)

With regard to Plaintiff's testimony, the ALJ noted

she cannot tolerate fluorescent lights and said incandescent lights were more tolerable. She can only drive about 15-20 minutes because she cannot be exposed to light. At home, her windows are darkened.

(Tr. 21; *see also* Tr. 599-601.) He further found that although her musculoskeletal impairments and photosensitivity could reasonably be expected to produce pain and limitations, he found her testimony less than entirely credible. In support of this conclusion, he cited the fact that "it appears claimant is capable of work in low

21

levels of incandescent lighting, as demonstrated by [her] online sales activity," the fact that "by her own admission, she is able to tolerate incandescent lighting," was able to participate "in sales at flea markets" and "is able to function reasonably well despite her impairments." (Tr. 23-24.)

For the most part, the ALJ's summary of the medical evidence pertaining to photosensitivity is complete and accurate, however, we note at least one significant omission. At no point in his opinion does the ALJ refer to an objective examination performed by her dermatologists on January 30, 2006. At that appointment, Ms. Eleleth was exposed to visible light produced by a slide projector positioned 12 inches away from her back. Fifteen minutes later, Plaintiff had "large plaques of erythema [abnormal redness] with dramatic edema [fluid accumulation]" and was diagnosed with solar urticaria. (Tr. 551; 556.) This objective medical evidence is consistent with Ms. Eleleth's testimony regarding the effects of natural and artificial light after even brief exposure. Even though this diagnosis came only in January 2006, there is no evidence to contradict her testimony that this condition had lasted since at least 1992.

We also question the ALJ's conclusion that Ms. Eleleth is capable of working in low levels of incandescent light, "as demonstrated by [her] online sales activity." (Tr. 24.) We find no reference to Ms. Eleleth working online as part of her home-

22

based resale business. She testified, in fact, that she photographed the items and her son posted the photos to the internet for her. (Tr. 595.) She also testified regarding her exposure to light from incandescent bulbs that she had the same reaction as to sunlight, "but I'm not under them in an intense way for very long usually. . . . incandescent lights, I'm more tolerant of." (Tr. 600.)

With regard to the comment by Drs. Mason and English that Plaintiff's "solar urticaria is a disabling condition that has severely impacted claimant's daily activities for 14 years," we agree that a physician's statement that an individual's condition is "disabling" is not dispositive of the issue. *See* Adorno v. Shalala, 40 F.3d 43, 47-48 (3d Cir. 1994); Smith v. Comm'r of Soc. Sec., No. 05-3533, 2006 U.S. App. LEXIS 10896, *15 (3d Cir. May 1, 2006) (the ALJ is not required to give any special significance to a physician's opinion that the claimant is disabled because that determination is an ultimate issue reserved to the Commissioner and to the later reviewing panels); 20 C.F.R. § 404.1527(e). However, a treating physician's opinion regarding the nature and severity of an individual's impairments is entitled to great, if not controlling, weight because that opinion "reflect[s] expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (internal quotations marks and

citation omitted.) After reviewing all the medical and non-medical evidence in the record, the ALJ may give less weight to a physician's opinion of disability which is not supported by medical evidence or may reject that opinion outright if it is contradicted by other medical evidence. Id.; *see also* Adorno, 40 F.3d at 48 (the ALJ "may properly accept some parts of the medical evidence and reject other parts [but] must consider all the evidence and *give some reason* for discounting the evidence he rejects.") (Emphasis added.)

Here, no other physician who examined Ms. Eleleth disputed her reports that she experienced severe skin reactions when exposed to natural or artificial light, and the test done with the projector light is objective medical evidence which supports those statements. *See* Morales, 225 F.3d at 317 (the "ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. In choosing to reject the treating physician's assessment the ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.") (Citations and internal quotations omitted.) Moreover, Drs. Hall and Mason are specialists in dermatology and it is well-established that greater weight should be given to a specialist's opinions than those of a generalist. *See* 20 C.F.R. § 404.1527(d)

24

setting out the criteria for weighing the opinions of various types of acceptable medical sources; *see also* Fargnoli v. Halter, 247 F.3d 34, 43 (3d Cir. 2001), and Sykes, 228 F.3d at 266, n.7.

Regardless of how Drs. Mason and English characterized Plaintiff's solar urticaria, we find the complete omission of any reference to the objective tests which demonstrated that she does, in fact, have a severe reaction[18] when exposed to even artificial light is sufficiently disturbing that we will remand this matter for clarification by the ALJ as to his reason for giving this evidence little or no weight.

3. *The hypothetical questions to the Vocational Expert:* Plaintiff argues that when the ALJ posed a question limiting her exposure to natural or artificial light to no more than 10 or 15 minutes, the VE indicated that even the jobs she had previously identified - night cleaner/housekeeper, night stock clerk, office clerk or mail clerk[19] - could not be performed under those

---

[18] Defendant characterizes Plaintiff's response to light exposure as an "itchy rash" which lasted only one hour before improving. (Def.'s Brief at 6.) However, he fails to note that previously "bumps" in the reddened areas "would last an entire day," but Plaintiff had "significantly decreased her exposure to sunlight." (Tr. 551.) Moreover, it logically follows that if Ms. Eleleth were exposed to light for more than 10-15 minutes on a constant basis - as she would be if working regularly - the erythema and edema would also be constant.

[19] The Court notes in passing that although the vocational expert testified the jobs she identified were consistent with their descriptions in the *Dictionary of Occupational Titles* ("DOT"), that statement appears to be not entirely correct. (*See* Tr. 25 and 605.) The ALJ had asked for light, unskilled jobs. According to the Social Security Administration, unskilled jobs can be learned from a short

conditions. Yet, the ALJ did not explain why he rejected the VE's testimony on this point.

At the hearing, the ALJ's first question hypothesized a working environment in which the individual would be able to "avoid strong levels of light, which would include both sunlight and artificial light. Individual is more tolerant of incandescent types of light." (Tr. 600.) The VE responded that the individual should be able to do light unskilled work such as night office cleaner or stock clerk performed at work sites where the individual had "control over lighting situations" or could be "done at night whenever most of the lights are off," or where the "lights are dimmed." Although she also posited general office clerk or mail clerk, the VE did not explain how those jobs could be performed at night or under low-light conditions where the individual could control the lighting level.[20] (Tr. 605.)

_____

demonstration or in less than one month, and are described as having a "specific vocational preparation ("SVP") rating of 1 or 2. *See* SSR 00-4p, "Use of Vocational Expert and Vocational Specialist Evidence and Other Reliable Occupational Information in Disability Decisions." According to the DOT, the jobs of stock clerk (retail) and general office clerk require an SVP of 4, and stock clerk is described as heavy work. *See* job descriptions at *Dictionary of Occupational Titles*, revised 4th edition, provided by the U.S. Department of Labor at www.occupationalinfo.org (last visited August 19, 2008.) An SVP rating of 4 is associated with semi-skilled, not unskilled, jobs. *See* Boone v. Barnhart, 353 F.3d 203, 207 (3d Cir. 2003). Thus two of the four jobs proposed by the VE do not comply with the ALJ's restrictions to light, unskilled work. We also question how work which involves extensive reading such as office clerk or mail clerk can be done under reduced lighting conditions.

[20] According to Social Security regulations, the ALJ must consider the claimant's ability to perform sustained work activities in "an ordinary work setting on a regular and continuing basis" and

26

The second hypothetical question added the further limitations of avoiding "hot and humid environments, fumes, odors and gasses, cold and wet environments.... [E]xposure to light is limited to 10 to 15 minutes.... Individual obviously cannot work near windows and must avoid bright artificial light." The VE replied, ".... The limits on exposure to light would, in my mind, eliminate all work." In response to a follow-up question, she testified that the time limitation was the factor that made the difference in her answers to the first and second hypothetical questions. (Tr. 605-606.)

The ALJ did not explain why he concluded that despite objective medical evidence that even artificial light exposure of 15 minutes or less caused Ms. Eleleth's skin to redden and blister, she could work on a regular basis, 8 hours a day or an equivalent schedule, as long as she could avoid "sunlight, windows, and bright artificial light." We recognize that an ALJ need not address or analyze every piece of evidence which comes before him. *See* Fargnoli, 247 F.3d at 42 (although the ALJ need not make reference to every relevant piece of information in the record, he must "consider and evaluate the medical evidence in the record

---

describe the maximum amount of each such activity the claimant can perform based on the evidence of record.) *See* Social Security Ruling 98-8p, "Assessing Residual Functional Capacity in Initial Claims," and 20 C.F.R. §§ 416.945(b)-(d), 404.1545(b)-(d). We question whether limiting jobs to those which are performed at night or under conditions where the individual can control the type of lighting or its intensity describes work performed in "an ordinary work setting." However, Plaintiff does not raise this argument and we decline to do so on her behalf.

consistent with his responsibilities under the regulations and case law.") At the same time, he may not ignore an entire line of testimony that is contrary to his decision. Phillips v. Barnhart, No. 03-2236, 2004 U.S. App. LEXIS 4630, *14, n.7 (3d Cir. Mar. 10, 2004) (written evaluation of all the evidence is not required, but the ALJ must articulate his analysis of a particular line of evidence at some minimal level.) Nor may the ALJ "pick and choose" among the evidence, selecting only that which supports his ultimate conclusions. See Morales, 225 F.3d at 318 (an ALJ may not simply rely on "the pieces of the examination reports that supported [his] determination," while excluding other evidence.)

It has long been the rule in this Circuit that the Vocational Expert's answer to a hypothetical question may be considered substantial evidence only if the question incorporates "all of a claimant's impairments that are supported by the record." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Here, the medical evidence supports Ms. Eleleth's claim that her skin blisters and reddens after only 10 to 15 minutes exposure to bright light. When this limitation was proposed to the VE, she testified that such a condition would eliminate even the jobs she had previously identified. Had that testimony been accepted, the ALJ would have been compelled to conclude at step five that there were no alternative jobs Plaintiff could perform and thus, she would be considered disabled. The fact that the ALJ did not explain why he

28

rejected this testimony is a significant omission which requires remand for clarification.

## V. FURTHER PROCEEDINGS

Under 42 U.S.C. § 405(g), a district court may, at its discretion, affirm, modify or reverse the Secretary's final decision with or without remand for additional hearings. However, the reviewing court may award benefits "only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the plaintiff is disabled and entitled to benefits." Krizon v. Barnhart, 197 F. Supp.2d 279, 291 (W.D. Pa. 2002), *quoting* Podedworney v. Harris, 745 F.2d 210, 222 (3d Cir. 1984).

Here, we are not convinced that the evidence as a whole leads to the inevitable conclusion that Plaintiff is entitled to benefits. However, we find the failure of the ALJ to clearly explain his conclusion at step three of the analysis or the reasoning behind his rejection of (1) the medical evidence supporting Plaintiff's claim of extreme photosensitivity and (2) the VE's testimony that such a restriction would eliminate all work to be significant omissions which require remand for clarification.

An appropriate order follows.

August  2/ , 2008          *William L. Standish*
                           William L. Standish
                           United States District Judge

29